```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION

PATRICIA LETCHER,                 )
                                  )
          Plaintiff               )
                                  )
     v.                           )    Case No. 2:05 cv 401
                                  )
TOWN OF MERRILLVILLE,             )
MERRILLVILLE POLICE DEPARTMENT,   )
OFFICER RUSSELL GREEN, OFFICER    )
DAVID BARRON, OFFICER GEORGE      )
HARBINSON,                        )
                                  )
          Defendants              )
```

OPINION AND ORDER

This matter is before the court on the Motion for Partial Summary Judgment filed by the defendants, Town of Merrillville, Indiana, Merrillville Police Department, Russell Green, David Barron, and George Harbinson, on December 17, 2007 (DE 56); and the Motion to Strike Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment filed by the defendants on February 5, 2008 (DE 63). For the reasons set forth below, the motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. The motion to strike is **DENIED**.

Background

In November 2002, the plaintiff, Patricia Letcher, began renting an apartment on 73rd Avenue in Merrillville, Indiana. (Deposition of Jane Schroeder, p. 11) The building had five apartments, and Letcher lived in the building's single basement apartment. (Deposition of Patricia Letcher, p. 16) Jane Schroed-

er, who acted as the building's on-site manager, lived in the apartment directly above Letcher.  (Letcher Dep. p. 16)

Tension between Letcher and Schroeder began to grow approximately three months after Letcher moved into the building. (Schroeder Dep. p. 25) On more than one occasion, Schroeder complained about the volume of Letcher's radio or television. (Schroeder Dep. p. 25) Letcher also complained to Schroeder about her practice of granting service personnel access to Letcher's apartment for repairs or reading the unit's water meter. (Schroeder Dep. p. 21)

On October 31, 2003, Letcher retired from the post office. (Letcher Dep. p. 25) A friend of Letcher's, Reginald Brown, learned of her retirement and called her to "stop by for a few" and to congratulate her. (Letcher Dep. p. 33; Deposition of Reginald Brown, p. 7) He arrived between 1:00 and 2:00 a.m. on November 3, 2003. (Brown Dep. p. 8)  Letcher and Brown were seated on a bed playing cards. (Letcher Dep. p. 27; Brown Dep. pp. 11-12)  According to Brown, the radio was at a low volume, and the two were not excessively loud. (Brown Dep. p. 10)

Schroeder testified that Letcher and Brown were loud enough that she felt it was necessary to call the police to complain about loud talking and "high euphoric-type giggling."  (Schroeder Dep. p. 40) As a result, the dispatch sent by the Merrillville police indicated disturbance at the apartment. (Merrillville Call For Service) At about 1:00 a.m., the police arrived and knocked on Letcher's apartment door.  Letcher asked who was knocking and

was told it was the Merrillville police. (Letcher Dep. p. 27) Letcher did not respond, but on Brown's suggestion, she picked up the phone to call and confirm that the police had been dispatched to her apartment. (Letcher Dep. p. 28) Before she could make the call, three Merrillville officers – Russell Green, David Barron and George Harbinson – entered the apartment using a passkey provided by Schroeder. (Letcher Dep. p. 29) Green approached Letcher, who remained seated on the bed, while the other officers remained near the door. (Letcher Dep. pp. 38, 39) Green asked for identification and Letcher responded, "What for? We're not doing anything." (Letcher Dep. p. 40) Green asked for identification again – "more abruptly" – and Letcher again responded "For what? We're not doing anything." (Letcher Dep. p. 40)

In her deposition, Letcher testified that Green grabbed her by the arms, lifted her from the bed, turned her, and placed her in handcuffs. (Letcher Dep. p. 41) Letcher stated that her blouse had opened while she was being handcuffed and that she was barefoot.  She was pulled out of the apartment and placed in a police car. (Letcher Dep. p. 45)

Brown stated that during this confrontation, Barron and Harbinson looked through boxes in the apartment. (Brown Dep. p. 14) Brown produced identification, and when Letcher was taken out, was asked to leave. (Brown Dep. p. 27) Letcher was taken to the Lake County Jail and was released around 5:00 a.m. when Brown posted her bail. (Brown Dep. p. 32)

The defendants described a markedly different series of events on the evening of November 3. Harbinson indicated that the officers were dispatched to the address based on a "disturbance call or a loud music call." (Deposition of George Harbinson, p. 7) Green arrived first, and Harbinson and Barron arrived at about the same time soon after Green. (Harbinson Dep. p. 8) Upon entering the building, the officers heard loud music and "some type of commotion, yelling." (Harbinson Dep. p. 8; Deposition of David Barron, p. 10; Deposition of Russell Green, pp. 7-8) The officers first met with Schroeder, who provided the officers with a key to Letcher's apartment. (Green Dep. p. 7) The officers' initial knock on Letcher's door was met with no response and then, after knocking again, with a female voice asking, "Who's there?" According to Harbinson and Barron, when they responded, "Merrillville Police," Letcher yelled "Fuck you." (Harbinson Dep. p. 8; Barron Dep. p. 12) Green testified that they unlocked the door with the passkey and entered "to make sure everything was okay because there was a lot of yelling going on." (Green Dep. p. 89) Green stated that Letcher continued to yell and refused to provide identification, leading to her arrest. (Green Dep. p. 8)

Similar differences surround the parties' versions of the events that occurred the subsequent evening, when Merrillville police officers again responded to Schroeder's complaint of loud noise from Letcher's apartment. (Schroeder Dep. p. 49) After midnight, Schroeder called the police to report that Letcher "was screaming on the phone so loud, she was totally out of control."

4

(Schroeder Dep. p. 49) Schroeder testified that three officers – not the same officers from the previous night – responded to the call. (Schroeder Dep. p. 50) She heard the officers ask Letcher to open the door and then she "heard the crash" as the officers broke into the apartment. (Schroeder Dep. p. 52) Schroeder stated that officers came back up the stairs while Letcher continued to scream and told Schroeder "if she keeps it up, call me and we'll come back and do something." (Schroeder Dep. p. 52) Schroeder stated that during this conversation, Green pulled up and got out of his police car and asked what was going on. (Schroeder Dep. p. 53)

When the police arrived the second evening, Letcher was on the phone with her friend, Gloria Washington. (Letcher Dep. pp. 83, 100) While on the phone, Letcher heard a loud "bamming" on the door but did not hear the officers say anything "because I was lying in my bedroom talking on the telephone." (Letcher Dep. p. 100) Letcher stated that three officers entered, one of whom was Green. (Letcher Dep. p. 100) The officers looked around the apartment and asked Letcher who was there with her. (Letcher Dep. p. 102) She testified that Green took the phone from her and threw it, stating, "You better shut up. If you say anything, I'll take you back where I took you last night." (Letcher Dep. p. 106) According to Letcher, they stood for only a moment longer then, "They left as quick as they came in and just left, like, poof." (Letcher Dep. p. 107)

5

In her deposition, Washington indicated that through the telephone, she heard the knocking on the door, heard Letcher ask "Who is it?", and heard the police respond. (Deposition of Gloria Washington, p. 20) She further testified that she heard a "boom" as the police entered and heard an officer say "Do you want me to take you like I did yesterday?" (Washington Dep. p. 20)

The disputes over the events of November 4 include the identity of the officers present in the apartment. There is no dispute that three officers responded to the call. (Letcher Dep. p 86; Deposition of Nick Berzac, p. 7) There also is no dispute that the officers who entered Letcher's apartment that evening were Nick Berzac, Gerarld Croarkin, and James Bogner. Letcher, in her deposition, insisted that Green threatened that he would take her to jail, just as he had done the prior evening.  Washington likewise testified that, over the phone, she expressly heard a male voice say "Do you want me to take you like I did yesterday." (Washington Dep. p. 21) In her briefs, Letcher ignored this discrepancy. Instead, she simply stated that an anonymous officer threatened to take her to jail without any reference to having taken her to jail the previous evening. (*See* Plaintiff's Memorandum in Opposition, pp. 6, 18)

The officers who responded on November 4 indicated that as they arrived they heard yelling from the apartment. (Berzac Dep. p. 8; Deposition of Gerald Croarkin, p. 13) Croarkin "knocked on the door very vigorously" and shouted that the Merrillville police were at the door. (Croarkin Dep. p. 13) He testified that

he could not recall if the shouting stopped, but, "due to the exigent circumstances," he forced entry into the apartment. (Croarkin Dep. p. 13) He indicated that the door opened with little effort. (Croarkin Dep. p. 14) According to Berzac, the door frame came apart with "very light force. It was almost as if it was like balsa wood and just broke away from the door." (Berzac Dep. p. 9) The apartment manager, Schroeder, who was on the floor above Letcher's apartment, heard a "crash" as the door was forced open. (Schroeder Dep. p. 51)

As they entered, Letcher was standing in the apartment, holding the phone. (Croarkin Dep. p. 14) They asked if she was screaming, and Letcher responded that she was the only one there and that she was fine. (Croarkin Dep. p. 14) Based on her response, the officers determined that there was nothing wrong and left. (Croarkin Dep. p. 14; Berzac Dep. p. 11)

Letcher filed claims againt the Town of Merrillville, the Merrillville Police Department, Officer Russell Green, Officer David Barron, Officer George Harbinson, Jane Schroeder, and Kerger Leasing, the company that owned the building. After entry of an order granting in part and denying in part their motion for summary judgment, Letcher dismissed all claims against Schroeder and Kerger. (*See* Opinion & Order, October 4, 2006 (DE 41); Order, October 13, 2006 (DE 453)) The remaining claims include false arrest, false imprisonment, violations of the search and seizure provisions of the state and federal constitutions, and malicious prosecution.

7

Discussion

In their motion to strike Letcher's response, the defendants recite that the response was filed one day late, on February 1 rather than January 31. Letcher, in response, indicated that she experienced difficulties with the court's electronic filing system which caused the delay. This insubstantial delay does not warrant avoiding the merits of this matter. The motion to strike is **DENIED**.

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *See* ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322-23, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986); ***Williams v. Excel Foundry & Machine, Inc***, 489 F.3d 309, 310 (7th Cir. 2007); ***Treadwell v. Office of the Illinois Secretary of State***, 455 F.3d 778, 781 (7th Cir. 2006); ***Branham v. Snow***, 392 F.3d 896, 901 (7th Cir. 2004).  The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. ***Adickes v. S.H. Kress & Company***, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); ***Lawrence v. Kenosha County***, 391 F.3d 837, 841 (7th Cir. 2004). A fact is material if it is outcome determinative under applicable law. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); ***Ballance v. City of Springfield, Illinois Police Department***, 424

F.3d 614, 616 (7th Cir. 2005); ***Hottenroth v. Village of Slinger***, 388 F.3d 1015, 1027 (7th Cir. 2004); ***Palmer v. Marion County***, 327 F.3d 588, 592 (7th Cir. 2003). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. ***Spiegula v. Hull***, 371 F.3d 928, 935 (7th Cir. 2004); ***Hines v. British Steel Corporation***, 907 F.2d 726, 728 (7th Cir. 1990). Finally, summary judgment "will not be defeated simply because motive or intent are involved." ***Roger v. Yellow Freight Systems, Inc.***, 21 F.3d 146, 148 (7th Cir. 1994). See also ***Miller v. Borden, Inc.***, 168 F.3d 308, 312 (7th Cir. 1999); ***Plair v E.J. Brach & Sons, Inc.***, 105 F.3d 343, 346 (7th Cir. 1997); ***United Association of Black Landscapers v. City of Milwaukee***, 916 F.2d 1261, 1268 (7th Cir. 1990).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

9

*Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511 *See also* *Scott v. Harris*, ___ U.S. ___, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment."); *Celotex Corp.*, 477 U.S. at 322-23, 106 S.Ct. at 2553; *Branham*, 392 F.3d at 901; *Lawrence*, 391 F.3d at 841; *Hottenroth*, 388 F.3d at 1027 (stating that a genuine issue is one on which "a reasonable fact finder could find for the nonmoving party"); *Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 573 (7th Cir. 2003).

The defendants seek summary judgment on Letcher's claims under §1983 on the basis that officers have been sued solely in their official capacities and the argument that Letcher has not met the standard for municipal liability.

The initial dispute raised by the argument regards whether the officers in question were sued in their official or individual capacities. A determination of the capacity in which a defendant has been sued must be made in reference to a complaint read in its entirety. *Hill v. Shelander*, 924 F.2d 1370, 1373-74 (7th Cir. 1991)("The point is not that an official capacity suit is to be presumed any time that the complaint fails to explicate clearly the capacity in which the defendant has been sued."). In *Miller v. Smith*, 220 F.3d 491 (7th Cir. 2000), the Seventh Circuit stated that *Hill*

10

>    spelled out a new regime for §1983 claims
>    that do not specify the capacity in which the
>    defendant has been sued: Where the plaintiff
>    seeks injunctive relief from official poli-
>    cies or customs, the defendant has been sued
>    in her official capacity; where the plaintiff
>    alleges tortious conduct of an individual
>    acting under color of state law, the defen-
>    dant has been sued in her individual capac-
>    ity.
>
>    *Miller*, 220 F.3d at 494 (*citing Hill*, 924
>    F.3d at 1373-74)

In the course of her brief, Letcher has conceded that her §1983 claims against Merrillville and its police department, whether directly or through the officers in their official capa- cities, are insufficient to overcome *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Accordingly, Letcher's claims of Fourth Amendment violations against the Town of Merrillville and its police department are **DISMISSED.**

Next, despite the defendants' assertion that over the course of this case, Letcher, through her counsel, had agreed that the officers were sued only in their official capacities, Letcher now claims that she had intended individual capacity claims throughout this litigation. The record contains insufficient evidence for the court to dismiss claims against the officers in their individual capacities based on the alleged representations of Letcher's counsel. In addition, Letcher's complaint, read in its entirety, suggests claims brought against the officers in their individual capacities. The defendants have pointed out that the caption in Letcher's complaint lists the defendants with both

11

the title "officer" and their individual badge numbers. The defendants further noted that they were dispatched pursuant to their role as police officers and arrived in uniform and marked police cars. This argument fails to recognize the consideration given to the nature of relief sought by the plaintiff. In this instance, Letcher has not sought injunctive relief and also has sought punitive damages. See *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) ("Furthermore, his request for punitive damages suggests an intent to sue the officers in their individual capacities.").

This argument also does not consider the fact that every §1983 claim must allege that conduct took place under color of state law.  In the case of law enforcement defendants, meeting the under color of law requirement invariably will include similar allegations that the defendants were performing official duties, in uniform, or driving marked cars. See *Latuszkin v. City of Chicago*, 250 F.3d 502, 506 (7th Cir. 2001); *Pickrel v. City of Springfield, Illinois*, 45 F.3d 1115, 1118 (7th Cir. 1995). The defendants' argument improperly conflates the requirement that a plaintiff allege that the defendants acted under color of law with the determination of their capacity in the suit. Accordingly, the court concludes that the defendants have been sued in their individual capacities.

As a result, the court must address the defendants' assertion of qualified immunity. The defense is a shield to liability when law enforcement officers "act in ways they reasonably

believe to be lawful." *Anderson v. Creighton*, 483 U.S. 635, 638-39, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). Under the defense, the reasonableness of an officer's actions includes "ample room for mistaken judgments" and shields an officer from all but "plainly incompetent" decisions. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991). *See also* *Chelios v. Heavener*, ___ F.3d ___ , 2008 WL 746842 at *9 (7th Cir. 2008).

This defense is assessed according to an initial inquiry into whether the facts show, in the light most favorable to the plaintiff, that an official violated a plaintiff's constitutional right. *Vose v. Kliment*, 506 F.3d 565, 569 (7th Cir. 2007) "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Shipman v. Hamilton*, ___ F.3d ___, 2008 WL 852144 at *2 (7th Cir. 2008).

"Physical entry if the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585, 100 S.Ct. 1371, 1379, 63 L.Ed.2d 639 (1980). The warrantless entry into a home, absent consent or exigent circumstances, is presumptively unreasonable. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 1947, 164 L.Ed.2d 650 (2006) (*citing* *Groh v. Ramirez*, 540 U.S. 551, 559, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004)); *United States v. Cazares-Olivas*, 515 F.3d 726, 728 (7th Cir. 2008). Exigencies that justify entry must be "so compelling that the warrantless

13

search is objectively reasonable under the fourth amendment." *Stuart*, 547 U.S. at 403, 126 S.Ct. at 1947. "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Stuart*, 547 U.S. at 403, 126 S.Ct. at 1947 (*quoting* *Mincey v. Arizona*, 437 U.S. 385, 393-94, 98 S.Ct. 2408, 2414, 57 L.Ed.2d 290 (1978). *See also* *United States v. Bell*, 500 F.3d 609, 612 (7th Cir. 2007)("It cannot be used merely to make law enforcement more efficient, to safeguard evidence that could be protected in another manner, or simply because a serious crime has been committed."); *Leaf v. Shelnuutt*, 400 F.3d 1070, 1081 (7th Cir. 2005) ("A warrantless search is permitted based on exigent circumstances when the police reasonably fear for the safety of someone inside the premises.").

Viewed in the light most favorable to Letcher, the events of November 3 did not present exigent circumstances that permitted the warrantless entry into her apartment. According to Letcher, she and Brown were not excessively loud, and upon being told that the police were at the door, she attempted to phone the Merrillville police before opening the door. This fairly brief period did not present exigent circumstances that justified entry into the apartment. Further, the officers' argument that an individual's safety may have been at risk is entirely speculative and apparently based on a later call report that referenced "2 to 3 subjects in apartment arguing." However, the complaint by Schroeder was made in response to excessive giggling. In addi-

14

tion, the officers' arguments for exigent circumstances reflect an inconsistent view of the record. For instance, the officers testified that there "was a lot of yelling going on" and that Letcher had shouted profanities at the officers when they knocked. However, the officers further argued that "complete silence following an announcement by police that they are at a potential victim's front door at 3:00 a.m. is ominous." (Reply, p. 11) Notwithstanding the mistaken reference to the time of the call, it is not clear whether the exigency facing the officers was based on the disturbance Letcher herself created or the need to protect her safety. According to Letcher, it was neither. The facts will have to be sorted out by the jury.

The officers have made a passing reference to the argument that "consent to enter was implicitly given by the manager of the apartment, in the form of providing the key." (Reply, p. 11) This argument is without merit. ***United States v. Chaidez***, 919 F.2d 1193, 1201 (7th Cir. 1990) ("A landlord does not have authority to permit a search of his tenant's leasehold."); ***United States v. Brown***, 328 F.3d 352, 356 (7th Cir. 2003). Regarding the second inquiry under the qualified immunity analysis, there is no question that the requirement that a warrantless entry must be supported by probable cause and exigent circumstances or consent was clearly established. See e.g ***Stuart,*** 547 U.S. at 407, 126 S.Ct. at 1950 (Stevens, J.)(concurring)("And the Court's unanimous opinion restating well-settled rules of federal law is so clearly persuasive that it is hard to imagine the outcome was

15

ever in doubt."). Accordingly, the individual defendants are not entitled to qualified immunity.

Though Merrillville police officers again were at Letcher's apartment the following evening and broke into the apartment, Letcher has no claim for a Fourth Amendment violation based on the events of November 4. Letcher already has conceded that there is no municipal liability for her federal claims, and there is no factual dispute that the three officers who entered Letcher's apartment the following evening were not Green, Barron, or Harbinson, the defendants named in this matter. As a result, the defendants' motion for summary judgment on Letcher's Fourth Amendment claims is **GRANTED** with respect to the Town of Merrillville and the Merrillville Police Department and **DENIED** with respect to Green, Barron, and Harbinson in their individual capacities.

The defendants' initial argument in support of summary judgment on Letcher's state law claims is based on the court's discretion to decline jurisdiction on supplemental state law claims when all federal claims have been dismissed. Because federal claims remain in this matter, the court retains jurisdiction over these claims.

The defendants' limited initial argument over these claims and Letcher's arguments in response leaves the status of these claims confused. For instance, Letcher stated that her "state constitutional claims are viable only as a species of false imprisonment and false arrest." She then cited to a section of

16

Indiana Code - I.C. 34-13-32(8) - that does not exist. Letcher may have intended to cite I.C. 34-13-3-3(8), which describes the immunity enjoyed by a government entity or employee acting within the scope of his employment while enforcing laws. This section expressly does not provide immunity in instances of false arrest or imprisonment. It is not clear how Letcher has found a private right of action under the Indiana Constitution from this statutory provision. She stated that because of the exclusion of false arrest from the immunity provision of the Indiana Tort Claims Act, a false arrest claim is not barred by the Indiana Supreme Court's decision in *Cantrell v. Morris*, 849 N.E.2d 488, 492 (Ind. 2006)(concluding that there is no private right of action for wrongful termination under Article I, Section 9 of the Indiana Constitution.) Assuming that Letcher properly has drawn an analogy between Article I, Section 9, which was the subject of the court's analysis in *Cantrell*, and Section 11, which is implicated in this matter, the analogy suggests that no constitutional claim is permitted. *See Cantrell*, 849 N.E.2d at 494 ("[T]o the extent Article I, Section 9 is relevant to any claim for discharge, the claim is simply a common law claim for wrongful discharge."). Similarly, Letcher's claim is simply a common law claim of false arrest. The Indiana Tort Claims Act simply makes clear that such a claim is not subject to the immunity of I.C. 34-13-3-3(8).

The final point regards Indiana Code 34-13-3-5(c), which provides that "A lawsuit filed against an employee personally must allege that an act or omission of the employee that causes a

17

loss is: (1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; or (5) calculated to benefit the employee personally." Letcher's claims against Harbinson, Green, and Barron likely fall within the scope of this statute and consequently would be precluded. The defendants did not assert this statute as grounds for summary judgment, almost certainly because the defendants believed Letcher had agreed to drop the claims against the individual defendants and realized she had not only with her response to the summary judgment motion. Nevertheless, to the extent that these provisions remain pertinent in this matter, they will not be the basis for summary judgment but will be addressed in the jury instructions. In the meantime, unlike her claims under the Fourth Amendment, Letcher's state law claims may stand against a municipality based upon respondeat superior liability. *See* **Minks v. Pina**, 709 N.E.2d 374, 382 (Ind. App. 1999). Consequently, this question also belongs to the jury.

Based on the record and the arguments of the parties, Letcher's claims under the Indiana Constitution are **DISMISSED**. Letcher's remaining state law claims against all defendants remain pending. Her federal claims remain pending only against the individual defendants, Green, Harbinson, and Barron based on the November 3, 2003 incident.

_____

For the foregoing reasons, the Motion for Partial Summary Judgment filed by the defendants, Town of Merrillville, Indiana,

Merrillville Police Department, Russell Green, David Barron, and George Harbinson, on December 17, 2007, (DE 56) is **GRANTED IN PART** and **DENIED IN PART;** and the Motion to Strike Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment filed by the defendants on February 5, 2008, (DE 63) is **DENIED.**

ENTERED this 13th day of May, 2008

                                        s/ ANDREW P. RODOVICH
                                           United States Magistrate Judge